**BAILIS et al. v. RECONSTRUCTION FINANCE CORPORATION.**

No. 839.

District Court, E. D. Pennsylvania.

May 9, 1941.

Isadore H. Schweidel, and Fred L. Rosenbloom, both of Philadelphia, Pa., for plaintiff.

Effingham Evarts, of New York City, and Samuel L. Sperling, of Philadelphia, Pa. (Sol. A. Liebman and George Kirk, III, both of New York City, of counsel), for defendant.

KALODNER, District Judge.

The issues having been brought to trial before me without a jury on amended complaint and answer, I make the following

### Findings of Fact

1. During the year 1936, the plaintiffs were engaged in the scrap metal business in the City of Philadelphia.

2. The defendant is a corporation duly organized and existing under and by virtue of an Act of Congress of the United States of America, 15 U.S.C.A. § 601 et seq., with agencies in the States of New York, Pennsylvania and elsewhere.

3. During the year 1936, C. K. Eagle & Company, Inc., owned various parcels of real estate, machinery and equipment located in various cities in the Commonwealth of Pennsylvania, including an industrial plant and the machinery and equipment therein, located in the City of Phoenixville.

4. During the year 1936, the defendant was the owner and holder of two recorded blanket mortgages made by C. K. Eagle & Company, Inc., to it, the first in the sum of $500,000 and the second in the sum of $250,000, each of which mortgages were liens upon the fixed assets of said C. K. Eagle &

Company, Inc., including the said property in the said City of Phoenixville, Commonwealth of Pennsylvania.

5. During the year 1936, the said Phoenixville plant of C. K. Eagle & Company, Inc., was also encumbered by a recorded mortgage held by the National Dime Bank of Shamokin, which was a first lien thereon.

6. That by resolution of defendant's Board of Directors adopted on April 27, 1936, the defendant authorized the Federal Reserve Bank of New York, its custodian, to release from the lien of defendant's mortgage, surplus manufacturing machinery located at the said Phoenixville plant of C. K. Eagle & Company, Inc., upon receipt by it of

(a) The entire sales price, less commissions and necessary expenses of sale.

(b) Written statement of the manager of the New York Loan Agency that he had received a written request from C. K. Eagle & Company, Inc., for the release of the machinery and equipment.

(c) A certification of agency manager that the sale price was reasonable and in all respects satisfactory to him.

(d) A written opinion of counsel to the New York Loan Agency that none of the defendant's rights would be destroyed, limited or otherwise affected by the sale, except as permitted by the resolution.

7. Said resolution adopted by the Board of Directors of the defendant did not contemplate or authorize the sale of real estate or any integral part thereof.

8. Said resolution adopted by the Board of Directors of the defendant did not contain a consent to or approval of the hiring of Edward M.-P. Murphy or Industrial Plants Corporation.

9. C. K. Eagle & Company, Inc., engaged Edward M.-P. Murphy as its special agent for the purpose of liquidating surplus manufacturing machinery located at said Phoenixville plant.

10. Defendant was thereafter furnished with a copy of a list of machinery intended to be sold by Edward M.-P. Murphy from and out of the Phoenixville plant of C. K. Eagle & Company, Inc.

11. Edward M.-P. Murphy and Industrial Plants Corporation were not the agents or sub-agents of defendant and they did not purport to act for the defendant or on its behalf.

12. On or about August 20, 1936, Industrial Plants Corporation accepted in writing an offer by the plaintiffs to it for the purchase of pipe, power house, boilers, railroad siding, motors, new boiler tubes, pick wheels, lamp shades, beams and tools located at the industrial plant of C. K. Eagle & Company, Inc., in Phoenixville, Pennsylvania, for the sum of $4,000 cash.

13. The said writing addressed and directed by Industrial Plants Corporation to the plaintiffs, among other things, provided "that all the merchandise and material purchased by you is bought 'as is'—'where is' —as inspected without warranty or guaranty * * *".

14. The representation made by Edward M.-P. Murphy to plaintiffs was that he was acting as agent for C. K. Eagle & Company, Inc., in the disposition of the machinery and equipment.

15. The list of the machinery intended to be sold by Murphy and referred to in finding No. 10 did not include all of the property mentioned in the contract of purchase between plaintiffs and Industrial Plants Corporation.

16. Plaintiffs made no inquiry of defendant or National Dime Bank of Shamokin prior to the payment by them of the purchase price to Murphy, as to whether defendant or said bank would release the property from the lien of their respective mortgages.

17. On or about said August 20, 1936, plaintiffs paid to said Edward M.-P. Murphy the sum of $4,000, being the amount of their bid.

18. Thereafter said Edward M.-P. Murphy paid over to C. K. Eagle & Company, Inc., by his check, sums of money which included an amount representing the said purchase price of $4,000 less 10 per cent commission.

19. On or about September 8, 1936, C. K. Eagle & Company, Inc., paid over to the defendant, by its check drawn on its general bank account, the sum of $6,300 and advised defendant that the amount so paid represented the net proceeds of sales of surplus equipment under the resolution adopted by the defendant on April 27, 1936, and further advised defendant that $3,600 thereof represented the proceeds for the sale of "Pipe, Power House, Boilers, Railroad Siding, Motors, New Boiler Tubes, Pick Wheels, Lamp Shades, Beams and Tools located at Phoenixville Plant". Said C. K.

Eagle & Company, Inc., at that time requested that the said amount of $6,300 be applied by defendant against the amortization due on its loan indebtedness to the defendant.

20. Defendant, pursuant to the request of C. K. Eagle & Company, Inc., applied the proceeds of the latter's check against the defaulted amortization payment and credited and reduced the indebtedness of said C. K. Eagle & Company, Inc., to the extent of $6,300.

21. Said transmittal of September 8, 1936, did not disclose to defendant that plaintiffs were one of the purchasers of the properties therein referred to.

22. Defendant did not know on September 8, 1936, and for a considerable period of time thereafter, that plaintiffs were the purchasers of the property involved in this action.

23. On September 8, 1936, and for a considerable period of time prior thereto, C. K. Eagle & Company, Inc., was indebted to the defendant in a sum exceeding $700,-000 and was in default under the terms of the notes and mortgages made by it to defendant, in that C. K. Eagle & Company, Inc., had failed to pay a balance of $8,637 of an amortization payment which was due and payable on June 30, 1936.

24. Between August 20, 1936, and September 8, 1936, plaintiffs removed from the aforesaid industrial plant of C. K. Eagle & Company, Inc., a portion of the property mentioned in the said contract between Industrial Plants Corporation and the plaintiffs, without the knowledge or consent of defendant.

25. Defendant, upon ascertaining the nature and identity of the property involved in the transaction between Industrial Plants Corporation and the plaintiffs, promptly refused to release the property from the lien of its mortgages.

26. C. K. Eagle & Company, Inc., upon ascertaining the nature and identity of the property involved in the transaction between Industrial Plants Corporation and the plaintiffs, repudiated the transaction.

27. In the month of September, 1936, but subsequent to September 8, 1936, C. K. Eagle & Company, Inc., refused to permit the plaintiffs or other persons to remove so much of the property mentioned in the said contract between Industrial Plants Corporation and the plaintiffs, which had not theretofore been removed.

28. The removal by the plaintiffs of a portion of the property mentioned in said contract between Industrial Plants Corporation and the plaintiffs impaired the security of defendant's mortgages.

29. Plaintiffs, by bill of sale dated November 3, 1936, attempted to sell the portion of the property which they had not removed from the plant to Schaefer and Max of the City of Allentown, Pennsylvania, for the sum of $4,630.

30. Plaintiffs, on or about July 6, 1937, returned to said Schaefer and Max said sum of $4,630 and paid to them, in addition, the sum of $240 interest.

31. The property mentioned in said contract between Industrial Plants Corporation and the plaintiffs constituted real estate or an interest therein.

32. That portion of the property mentioned in said contract between Industrial Plants Corporation and the plaintiffs, which plaintiffs were prevented from removing, constituted an integral part of the real estate and was in fact real property.

33. Plaintiffs at no time returned or offered to return to either C. K. Eagle & Company, Inc., or defendant any of the property actually removed by them.

34. Edward M.-P. Murphy exceeded the authority vested in him by C. K. Eagle & Company, Inc., in approving the transaction between Industrial Plants Corporation and plaintiffs.

35. Industrial Plants Corporation had no authority from C. K. Eagle & Company, Inc., or defendant to sell the property mentioned in said contract between it and the plaintiffs.

36. Plaintiffs at no time requested the defendant to release said property from the lien of its mortgages.

37. C. K. Eagle & Company, Inc., at no time requested the defendant to release said property from the lien of its mortgages.

38. Defendant at no time consented to the transaction between Industrial Plants Corporation and plaintiffs and at no time were the conditions set forth in the resolution adopted by defendant's Board of Directors ever complied with.

39. Defendant at no time released or agreed to release or authorized any person, by a writing or otherwise, to release or agree to release from the lien of its mortgages, the property mentioned in said con-

tract between Industrial Plants Corporation and the plaintiffs.

40. Defendant at no time consented to, or authorized any person to consent to, or contemplated the severance from the freehold of the property mentioned in the contract between Industrial Plants Corporation and the plaintiffs.

41. There is no evidence that the National Dime Bank of Shamokin at any time released, or authorized any person, by writing or otherwise, to release from the lien of its mortgage, the property mentioned in said contract between Industrial Plants Corporation and plaintiffs.

42. On September 8, 1936, defendant did not have any knowledge of the employment of Industrial Plants Corporation by Murphy as the latter's sub-agent.

43. No facts have been presented to establish the market value of the property which plaintiffs were prevented from removing by C. K. Eagle & Company, Inc.

44. Prior to the commencement of this action, plaintiffs received a dividend from the Estate of C. K. Eagle & Company, Inc., in reorganization proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C. A. § 207, in the District Court of the United States for the Southern District of New York, in the sum of $260.45 which was credited by plaintiffs against any claim they may have against defendant.

## Discussion

The Reconstruction Finance Corporation had mortgages totalling $750,000 on the real estate, machinery and equipment of C. K. Eagle & Company, Inc. The mortgages were in default, and the R. F. C., by two resolutions, authorized the release of surplus manufacturing machinery located at the Phoenixville plant of Eagle from the lien of its mortgages, provided the proceeds of the sale of such surplus, less commissions and necessary expenses of sale, were paid over to R. F. C. in reduction of the mortgage obligations.

Eagle employed Edward M.-P. Murphy as its special agent to sell the surplus manufacturing machinery at the Phoenixville plant. Murphy prepared a list or catalog of the surplus machinery and equipment, which he was to offer for sale, and the defendant was furnished with a copy of it. Murphy, through his agent or in association with the Industrial Plants Corporation, then sold certain machinery and equipment to the plaintiffs in this case for $4,000. The proceeds of this sale, less ten per cent commission, were paid by Murphy to Eagle. The latter sent its own check to the R. F. C. for $6,300 which included the proceeds of the sale in question, as well as the proceeds of the sale of other machinery, and the R. F. C. applied the $6,300 on account of the mortgage indebtedness.

When the R. F. C. received the $6,300 remittance from Eagle, it discovered that the sale to the plaintiffs included equipment other than it had authorized Eagle to sell and other than was embraced in the list prepared by Murphy and submitted to the R. F. C., and that the removal of this equipment would impair the security of its lien. It thereupon instructed Eagle to prevent the removal of this excess property. By the time this instruction was received the plaintiffs had already removed a substantial part of the equipment and had sold the remaining unremoved portion for $4,630. Eagle prevented the removal of the latter in accordance with the defendant's orders.

As a result of the refusal of Eagle to permit the removal of the remaining equipment, plaintiffs were compelled to refund to their purchaser the sum of $4,630, plus $240 interest, or $4,780, which they now seek to recover from the R. F. C.

Plaintiffs base their right of recovery against the defendant on the grounds (1) that there was an agency; (2) that there was a ratification by the R. F. C. of Murphy's sale to the plaintiffs.

Conceding that there was no principal-agent relationship between the defendant and Murphy, by virtue of any employment by the defendant of Murphy to act as agent, the plaintiffs advance the novel contention that there existed in this case a Tinkers-to-Evers-to-Chance situation; that is, that Eagle was the agent of the defendant, and that Murphy, by reason of his employment as agent by Eagle, became the sub-agent of the defendant.

That theory is wholly untenable. The plaintiffs contend that solely because of the mortgagor-mortgagee relationship between Eagle and the R. F. C., that Eagle was the agent of the defendant, since under the Pennsylvania rule the mortgagee has title to the mortgaged premises subject to defeasance by the mortgagor. That is not the Pennsylvania law.

Under the Pennsylvania decisions, the defendant was not the owner of the property in question—it merely had a lien by

virtue of its mortgages. The Pennsylvania rule is succinctly stated in Bulger v. Wilderman and Pleet, 101 Pa.Super. 168, 171, 173, 174.

Said the court in that case (101 Pa. Super. at page 171): "* * * Generally stated, the rule in Pennsylvania is that although in form a conveyance of title, a mortgage is in reality only a security for the payment of money, or performance of other collateral contract: Wilson v. Shoenberger's Ex'rs, 31 Pa. 295; McIntyre v. Velte, 153 Pa. 350 [25 A. 739]."

Again, 101 Pa.Super. on pages 173 and 174: "* * * The correct principle was stated by Chief Justice Gibson in Presbyterian Corporation v. Wallace, 3 Rawle [Pa.] 109, as follows: 'In form, a mortgage is certainly a conveyance; but it is unquestionably treated at law here, in the way it is treated in equity elsewhere, as a bare incumbrance, and the accessory of a debt. As between the parties it is a conveyance, so far as is necessary to enforce it as a security: *As regards third persons, the mortgagor is the owner, even of the legal estate.* This distinction, which, if attended to, will be found to reconcile the apparently jarring dicta of the judges, is as firmly established by the practice and decisions of the courts in Pennsylvania, as any other in the law.' This constitutes the gist of Mr. Lloyd's conclusion in his article in the University · of Pennsylvania Law Review, supra, which was approved by Chief Justice Moschzisker in Harper v. Consolidated Rubber Co., 284 Pa. 444, 451 [131 A. 356], as follows: 'Professor William H. Lloyd, in a recently published article (73 U. of P. Law Rev. 43) discusses all of the leading Pennsylvania cases on the subject in hand, and states the conclusion that, while many of our decisions are difficult, if not impossible, to be reconciled (a view which seems to be supported by a reading of the cases), the title to the mortgaged premises may be accounted in the mortgagee "as between the parties" to the transaction represented by the mortgage "so far as it is necessary to render the instrument effective as a security," but *as to all other persons (with some special exceptions) the mortgagor is regarded as the owner, and the mortgage as a mere encumbrance and accessory to the debt," which summarizes the predominant effect of our decisions.'"* (Emphasis supplied.)

See also the admirable discussion of the Pennsylvania rule by Judge Finletter in Miles v. Kolsky & Co., 13 Pa. Dist. & Co. R. 579.

Since, then, there was no agency relationship between Eagle and the defendant, and since there was no agency relationship between Murphy or Industrial Plants Corporation and the defendant, the plaintiffs' claim against the defendant must fall.

█ The plaintiffs' contention as to ratification is academic, in view of the failure to establish any agency relationship between Eagle and the defendant, or any agency relationship between Murphy or Industrial Plants Corporation and the defendant.

Incidentally, the record discloses that there was never at any time any representation that Eagle was acting as the agent of the defendant, or that it was authorized to act as the agent of the defendant; nor was there any evidence that Murphy or Industrial Plants Corporation represented themselves to the plaintiffs as the defendant's agent or sub-agent.

The element of ratification does not exist in this case. Ratification can only bind the principal and, as previously found, the defendant was not the principal in this case.

█ It must be kept in mind that the basis of the plaintiffs' suit is breach of contract, and obviously, if there has been no contract as far as the defendant is concerned, there can be no damages by reason of an alleged breach. It is true that the defendant received a payment from the mortgagor with a letter of explanation that $3,600 thereof was realized from the proceeds of the sale of the equipment involved in the present controversy. This suit, however, is not based on the theory of a quasi contract and, even though I should be constrained to apply the equitable principles of such a theory, the plaintiffs in this case have not offered to restore the defendant to status quo by returning the portion of the equipment removed, nor have they explained their reason for not doing so. Additionally, the plaintiffs have failed to show that defendant was unjustly enriched and that the plaintiffs suffered a corresponding detriment. An offer of restoration is a condition precedent to any action for restitution. See Restatement of the Law of Restitution, Quasi Contracts and Constructive Trusts, Section 65.

In view of my conclusions, it is unnecessary to discuss the contention of the defendant that the property sold was real prop-

erty, and that under the Pennsylvania statute of frauds a contract for the release of such property from the lien of mortgage must be in writing, signed by the party sought to be charged or by his agent duly authorized in writing.

I therefore make the following

### Conclusions of Law

1. Edward M.-P. Murphy and Industrial Plants Corporation were not authorized to bind the defendant to the transaction between plaintiffs and Industrial Plants Corporation.

2. The conditions specified in the resolution adopted by the defendant's Board of Directors were at no time complied with.

3. Edward M.-P. Murphy and Industrial Plants Corporation were not agents of the defendant and did not profess to be acting for defendant.

4. The contract entered into between Industrial Plants Corporation and plaintiffs was not binding upon the defendant.

5. There is no privity of contract between plaintiffs and defendant.

6. Plaintiffs have failed to sustain the burden of proving any contract or any contractual relationship with the defendant.

7. Defendant had the legal right to retain the proceeds of the check for $6,300 transmitted to it by C. K. Eagle & Company, Inc., and credit the indebtedness of said company therewith.

8. Defendant at no time consented to, or authorized any person to consent to, or contemplated the severance from the freehold of the property mentioned in the contract between Industrial Plants Corporation and the plaintiffs.

9. Plaintiffs are not a party to any enforceable contract for the sale of the property mentioned in the contract between Industrial Plants Corporation and plaintiffs, or for the release of said property from the lien of its mortgages.

10. The contract between Industrial Plants Corporation and plaintiffs was promptly repudiated by defendant.

11. The repudiation by defendant was not waived.

12. The retention by defendant of the proceeds of the check by C. K. Eagle & Company, Inc., and the application thereof to the credit of the existing defaulted indebtedness of said Company to defendant, does not constitute, as a matter of law, a ratification of the contract between Industrial Plants Corporation and plaintiffs.

13. There is no evidence of a written ratification by defendant of the contract between Industrial Plants Corporation and plaintiffs.

14. Plaintiffs have failed to sustain the burden of establishing that damages had been sustained by them as a result of any improper conduct of the defendant.

15. Plaintiffs' complaint is dismissed and judgment is directed in favor of the defendant.