848 A.2d 94

**Zygmont A. PINES, Court Administrator of Pennsylvania and Administrative Office of Pennsylvania Courts, Petitioners,**

**v.**

**Terrance FARRELL, Recorder of Deeds for the County of Chester, Respondent,**

**City of Philadelphia, Intervenor.**

Supreme Court of Pennsylvania.

Submitted on Briefs Nov. 7, 2003.

Decided April 28, 2004.

Howard M. Holmes, Philadelphia, for Administrative Office of Pennsylvania Courts.

Edward Clement Sweeney, Downington, for Terrance Farrell.

Craig R. Gottlieb, for City of Philadelphia.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

*OPINION*

Justice CASTILLE.

On October 31, 2003, this Court assumed plenary jurisdiction over this matter, pursuant to 42 Pa.C.S. § 726. The issue before us is whether financial regulations promulgated by the Court Administrator of Pennsylvania, which interpreted the definition of "property transfer" set forth in 42 Pa.C.S. § 3733(a.1)(1)(v) to include mortgage assignments, mortgage releases, and mortgage satisfactions, are valid and enforceable. For the reasons that follow, we hold that these actions are property transfers and that they bind the recorders of deeds, clerks of courts, and equivalent officials throughout Pennsylvania who are charged with the duty of collecting fees in connection with such transfers.

On October 24, 2002, this Court entered a per curiam order onto the Judicial Administration Docket which directed that "the Court Administrator of Pennsylvania is authorized to promulgate financial regulations to implement 42 Pa.C.S. § 3733 as amended by Act 122 of 2002." *See In Re Promulgation of Financial Regulations Pursuant to 42 Pa.C.S. § 3502(A)*, No. 245 Judicial Administration Docket No. 1. The order was effective immediately and the text of the order noted that it was entered pursuant to this Court's rulemaking authority, as well as Section 3502(A) of the Judicial Code.[1] The amendment to Section 3733, which our Order was designed to implement, became effective on November 1, 2002.

Section 3733 is found in Subchapter C ("Judicial Computer System") of Chapter 37 ("Facilities and Supplies") of the

---

1. Section 3502(A) provides:

    **§ 3502. Financial regulations**

    (a) General rule.—The governing authority may promulgate regulations relating to forms and accounting methods to be utilized in connection with funds appropriated to the unified judicial system and all fees, costs, grants, moneys paid into court and all other unappropriated funds handled by system and related personnel other than county staff, defining for such accounting purposes terms not otherwise defined in this title, specifying the time and manner of making remittances and disbursements of moneys by system and related personnel other than county staff, and fixing bonding requirements of system and related personnel other than county staff.

Judicial Code, and is entitled "Deposits into account." The Act 122 amendment to Section 3733 rewrote subsection 3733(a.1), which governs "additional fees." That subsection now reads as follows:

**(a.1) Additional fees.—**

(1) In addition to the court costs and filing fees authorized to be collected by statute:

(i) An additional fee of $10 shall be charged and collected by the prothonotaries of the Pennsylvania Supreme, Superior and Commonwealth Courts for each initial filing for which a fee, charge or cost is now authorized.

(ii) An additional fee of $10 shall be charged and collected by the prothonotaries, clerks of orphans' courts and registers of wills of all courts of common pleas, or by any officials designated to perform the functions thereof, for the initiation of any civil action or legal proceeding.

(iii) An additional fee of $10 shall be charged by the clerks of courts of all courts of common pleas, or by any officials designated to perform the functions thereof, for the initiation of any criminal proceeding for which a fee, charge or cost is now authorized and a conviction is obtained or guilty plea is entered.

(iv) An additional fee of $10 shall be charged and collected by the minor judiciary, including district justices, Philadelphia Municipal Court, Philadelphia Traffic Court and Pittsburgh Magistrates Court, for the initiation of a legal proceeding for which a fee or cost is now authorized, except that in criminal, summary and traffic matters the fee shall be charged only when a conviction is obtained or guilty plea is entered.

(v) An additional fee of $10 shall be charged and collected by the recorders of deeds and clerks of court, or by any officials designated to perform similar functions, for each filing of a deed, mortgage or property transfer for which a fee, charge or cost is now authorized.

*Id.*[2] At issue in this dispute is subsection (v), which requires

---

**2.** Subsection (2) directs in very specific terms the manner in which the additional fees shall be "fixed and charged" in the ensuing fiscal years,

collection of an additional $10 fee "for each filing of a deed, mortgage or property transfer for which a fee, charge or cost is now authorized."

In accordance with the authority delegated in this Court's Order, the Court Administrator promulgated financial regulations which, *inter alia*, defined the filings encompassed by subsection (v). The regulations provide that the documents defined as a mortgage, deed or property transfer include (subject to later amendment): (i) Deeds in any form; (ii) Mortgages; (iii) Mortgage assignments; (iv) Mortgage releases; (v) Mortgage satisfaction pieces; (vi) Installment sales agreements; (vii) Leases for a term of thirty (30) years or longer; and (viii) Easements.

On February 10, 2003, respondent Terrance Farrell, the Recorder of Deeds of Chester County, Pennsylvania, filed a declaratory judgment action in the Court of Common Pleas of Chester County against petitioners, the Court Administrator and the Administrative Office of Pennsylvania Courts ("AOPC"). Respondent alleged, *inter alia*, that the Court Administrator exceeded the grant of authority provided in this Court's October 24, 2002 Order when he interpreted the term "property transfer." Respondent sought a judgment declaring that it is within the discretion of individual recorders of deeds to determine what the General Assembly meant by the term "property transfer" and that the Administrator's definition of "property transfer" is invalid. In response, petitioners filed preliminary objections asserting a lack of jurisdiction over the subject matter and improper venue, and demurring to the complaint.

On August 7, 2003, the Court of Common Pleas of Chester County, per the Honorable Jacqueline C. Cody, sustained the preliminary objection alleging lack of jurisdiction and, as a result, transferred the matter to the Commonwealth Court. On September 2, 2003, the Commonwealth Court, per the Honorable Warren Morgan sitting as a court of original jurisdiction, directed briefing and oral argument of petitioners'

with the fees apportioned between "the Judicial Computer System Augmentation Account" and the "Access to Justice Account."

remaining preliminary objections concerning venue and whether the complaint stated a valid cause of action.

Prior to the scheduled oral argument, however, petitioners belatedly filed an Emergency Petition in this Court, requesting that this Court assume plenary jurisdiction over the matter. On October 31, 2003, this Court entered a *per curiam* order assuming jurisdiction over this matter involving the Court Administrator and the AOPC, both of whom are subject to this Court's authority. The *per curiam* order also directed respondent to make a fully documented accounting of each filing that fell under the Court Administrator's definition of "property transfer" which had not been collected and to begin collecting the disputed fees to be placed in an interest-bearing escrow account. The matter was then briefed on an expedited basis and submitted for this Court's decision.[3]

On December 10, 2003, the City of Philadelphia filed a Motion to Intervene and a Memorandum of Law in support of that Motion. On December 15, 2003, the City filed its Intervenor Brief. This Court granted the Motion to Intervene on December 23, 2003, based on the fact that the City is the Recorder of Deeds for Philadelphia County and its collection of fees will be equally affected by our decision,[4] and that the City's brief was not merely repetitive of the limited argument

**3.** Rather than filing the brief directed by this Court, respondent instead filed a letter noting that he "relies on briefs and pleadings already filed in this case." Additionally, respondent appended an opinion letter issued by the Solicitor of the "Recorder of Deeds Association" as an exhibit, and relied upon that letter in support of his view of "what constitutes a 'property transfer' under Act 122." The lower court "briefs and pleadings" adverted to by respondent are not included in the original record. Moreover, this Court is not obliged to root through the record and determine what arguments, if any, respondent forwarded below, nor are we obliged to fashion an argument on his behalf. This is not a recommended form of advocacy.

**4.** Rule 2327 of the Pennsylvania Rules of Civil Procedure provides that: "At any time during the pendency of an action, a person not a party to the action may intervene therein ... if .... (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa.R.Civ.P. 2327(4).

forwarded by respondent, but instead, promoted a proper resolution of the dispute.[5]

Preliminarily, we must first determine whether the Court Administrator had the authority to promulgate a regulation interpreting the term "property transfer." Respondent contends that the Administrator had no such authority, that our order authorized him only to promulgate "financial regulations" and that the Administrator's interpretation of the term "property transfer" is not within the scope of that authorization. Respondent states that it is unclear what this Court meant in stating that the Administrator was authorized to promulgate "financial regulations." This argument need not detain us long.

This Court's order authorized the Court Administrator to promulgate financial regulations necessary to implement 42 Pa.C.S. § 3733, as amended by Act 122. The order explicitly cited to Section 3502(a) of the Judicial Code. That Section authorizes the relevant authority to promulgate financial regulations in connection with the collection of funds appropriated to the unified judicial system. The statute also recognizes that "the governing authority" may "defin[e] for such accounting purposes terms not otherwise defined in this title." In light of the explicit terms of our order and the authority cited, the notion that the Court Administrator lacked power to define terms is meritless. Although respondent may not agree with the Administrator's enumeration of which filings are "property transfers," the Administrator did not act beyond the **authority** delegated to him in providing practical guidance as to which filings are encompassed by the statutory term.

We now turn to respondent's claim that the Court Administrator erred in defining "property transfer" to include mortgage assignments, mortgage satisfaction pieces and mortgage releases.[6] As this question ultimately involves a question of statutory interpretation, this Court's review is plenary.

5. An application for intervention may be refused if "(2) the interest of the petitioner is already adequately represented." Pa.R.Civ.P. 2329(2).

6. In the letter respondent filed in lieu of a brief, he also challenges whether an easement should be considered a "property transfer."

Petitioners argue that the phrase "property transfer" is not a term of art and the Court Administrator's interpretation of the filings subject to an additional fee under Section 3733(a.1)(1)(v) is a reasonable one. Petitioners further argue that the categories of filings set forth in the Administrator's regulation are consistent with the legislative intent that property transfers already subject to a filing fee likewise should be subject to this additional filing fee.

In response, respondent avers that the regulations are an unreasonable interpretation of the filings which are intended to be subject to an additional fee under Act 122. Respondent argues that, although certain documents identified by the Court Administrator as representing "property transfers" may be debatable, reasonable minds could not differ that the Court Administrator erred in including mortgage assignments, mortgage satisfactions and mortgage releases.

■ Proper resolution of this question first requires an *examination of the legal definition of a mortgage; i.e., if a mortgage represents a property transfer, it logically follows that transactions involving mortgages are also property transfers.* The "title theory" of mortgages deems a mortgage to be a conveyance, while a competing theory, the "lien theory," suggests that a mortgage merely represents a security interest. Petitioners argue that a mortgage has always been understood to be a conveyance in Pennsylvania under the "title theory," while courts and conveyancers have also understood that the practical purpose of a mortgage is to provide security in exchange for the mortgagor's fulfillment of conditions. Petitioners maintain that a mortgage comprises both a conveyance and a defeasance upon fulfillment of the mortgage requirements. Petitioners further argue that Pennsylvania case law has resolved the conflict between the "title" and

Respondent's entire argument, however, consists of the following statement: "an 'easement' is not the type of substantial property interest that should fall under the meaning of 'property transfer.'" This bald assertion is not self-proving. Since respondent has failed to provide any argument or legal citation to support this claim regarding easements, we will not consider it. Respondent does not challenge the Administrator's designation of other filings as property transfers.

"lien" theories of mortgage law by recognizing that mortgages have elements of both conveyances and liens. Thus, a mortgage has a dual nature, acting as a conveyance of property between the mortgagor and mortgagee, while also acting as lien between the mortgagor or mortgagee and third parties.

In its Intervenor brief, the City of Philadelphia agrees that whether a mortgage itself is considered a property transfer should dictate whether derivative documents such as mortgage assignments, mortgage satisfactions or mortgage releases are also property transfers. Intervenor's Brief at 8–9. But the City argues that, under Pennsylvania common law, mortgages merely represent security interests, and not a transfer of property. The City further argues that the "title theory" of mortgages should be deemed inapplicable as obsolete, since a mortgagee nowadays cannot dispossess the mortgagor without a default and a notice to cure the default.

Under Pennsylvania common law authority, there is logical reason for both arguments advanced. As the City notes, there is ample caselaw to support the position that mortgages are merely security interests for the payment of money, performance or other collateral. *E.g., Winthrop v. Arthur W. Binns, Inc.,* 160 Pa.Super. 214, 50 A.2d 718, 719 (1947); *see also In re State Tax on Foreign–Held Bonds,* 15 Wall. 300, 82 U.S. 300, 314, 21 L.Ed. 179 (1872) ("[I]n Pennsylvania ... a mortgage is only a lien or incumbrance on the land mortgaged, and that the mortgagee has no estate in the land."); *In re City of Philadelphia, Fortieth Ward,* 360 Pa. 589, 63 A.2d 42, 43 (1949) ("[A] mortgage is both in law and in equity only a security for the payment of money and passes no title to the land. The mortgagor is the owner of the land.").

On the other hand, the title theory remains viable. It is notable that, in forwarding their respective arguments, all parties invoke the same treatise, *Ladner on Conveyancing in Pennsylvania* (4th ed. 1979 & Supp.2003). Ladner defines a mortgage as follows:

A mortgage is a pledge of an estate in real property as collateral security for payment of money or performance of

some other act. In form, it recites an obligation by the mortgagor to pay a certain sum of money to the mortgagee . . . and to keep certain other covenants. . . . To secure performance of these obligations, the real property described in the mortgage is **conveyed to the mortgagee,** provided that the conveyance is defeasible (i.e., is to become void) if and when all of the covenants have been performed. . . .

*Id.* § 12.01, at 3–4. Pennsylvania caselaw likewise has consistently recognized that "[i]t is well settled in Pennsylvania that a mortgage . . . in form [is] a conveyance of title." *Winthrop,* 50 A.2d at 719; *see also Hahnemann Medical College & Hospital v. Commonwealth,* 52 Pa.Cmwlth. 558, 416 A.2d 604, 607 (1980) ("A mortgage is in essence a defeasible deed, requiring the grantee to reconvey the property held as security to the grantor upon satisfaction of the underlying debt or fulfillment of established conditions."). Thus, petitioners are correct in stating that Pennsylvania law recognizes mortgages as acting both as conveyances and as security interests or liens. *See In re State Tax on Foreign–Held Bonds,* 82 U.S. at 322–23 ("Though in form a conveyance, [a mortgage] was both at law and equity a mere security for the debt. That such is the nature of a mortgage in Pennsylvania has been frequently ruled by her highest court.").

What definitively tips the balance in this Court's view, is that, although a mortgage can be considered both a conveyance in form as well as a security interest, for purposes of actions involving recording acts, mortgages traditionally have been treated as conveyances. "In all questions upon the recording acts, the mortgage is spoken of as a conveyance of land." *In re Long's Appeal,* 77 Pa. 151 (1874). Moreover, the provisions at issue in Act 122 which pertain to duties in conjunction with the recording of documents specifically designate mortgages as among the recordings subject to the new fee. Thus, for purposes of determining whether mortgage assignments, mortgage satisfactions and mortgage releases are property transfers, we begin with the premise that a mortgage conveys the property subject to the mortgage to the

mortgagee until the obligations under the mortgage are fulfilled.[7]

### Mortgage Assignments

With respect to mortgage assignments, petitioners cite to *Philips v. Bank of Lewistown*, 18 Pa. 394 (1852) and argue that a "mortgage is in form a conveyance of the land, and an assignment of it is another formal conveyance of the same land." *Id.* at 401. Petitioners suggest that it would be absurd not to regard a mortgage assignment as a transfer of property. In other words, if an assignment is not a transfer, then title of the mortgaged property theoretically remains with the original mortgagee even after assignment. This circumstance would be absurd since the very point of an assignment is to convey all of the original mortgagee's rights to the assignee. Respondent responds that an assignment is defined in Ladner as "a writing under seal, signed, witnessed, acknowledged and recorded, assigning the bond and mortgage to an assignee." *Ladner, supra,* § 12.29(a), at 88. Respondent argues that such a writing only assigns an already existing interest in real estate previously created in favor of the mortgagee as defined by the mortgage document. As no assignee's rights can rise to a higher level than the rights of the assignor, respondent concludes that no property transfer occurs as a result of a mortgage assignment.

■ Given our conclusion that a mortgage conditionally conveys the subject property, it logically follows that an assignment of the mortgagee's rights likewise effects a conditional transfer of the subject property to the assignee. Additionally, even accepting respondent's argument that an assignee's rights cannot exceed those of the assignor, a property transfer still exists because the assignee will receive the rights held by the assignor, *i.e.,* the conveyance of the property subject to the terms of the mortgage. *See, e.g., Hilltop*

---

**7.** As our conclusion regarding the treatment of a mortgage as a conveyance is limited to the recording acts and Section 3733(a.1)(1)(v), it is unnecessary to address the City's fear of the adverse consequences of applying the title theory on mortgages in bankruptcy and foreclosure matters.

*Properties Associates Limited Partnership v. Commonwealth of Pennsylvania,* 768 A.2d 1189, 1190–91 (Pa.Cmwlth.2001) (noting that after Chase Manhattan Bank, holder of mortgage, assigned rights to Hilltop Properties, sheriff conveyed property by deed pursuant to assignment). Thus, the Court Administrator correctly defined property transfer to include mortgage assignments.

### Mortgage Satisfactions

As to mortgage satisfactions, petitioners first note that a mortgage is an agreement where, if the mortgagor satisfies the debt as scheduled, then the mortgage and the estate conveyed to the mortgagee terminate and become void. *See Ladner, supra,* § 12.11, at 19–20. The most common way to satisfy a mortgage is through the mortgagee's execution and recording of a "satisfaction piece." Although a typical satisfaction piece does not employ words of conveyance, a "defeasance clause" is defined as: "A mortgage provision stating that the conveyance to the mortgagee will be ineffective if the mortgagor pays the debt on time." *Black's Law Dictionary,* 428 (7th ed.1999). If the defeasance clause makes the original conveyance ineffective, then the effect of the satisfaction piece, which carries out this action, must be to reconvey title back to the mortgagor. In short, the recording of a satisfaction piece effectuates a defeasance, the purpose of which is to undo or revoke the original conveyance accomplished by the mortgage. Thus, petitioners conclude, the effect of the satisfaction is to transfer the mortgaged property back to the mortgagor.

Respondent responds that a mortgage satisfaction merely discharges the lien of a mortgage and does not transfer property or a property interest. Respondent notes that a "mortgage satisfaction" means that a notation is made on the margin of the record of the mortgage (or by a satisfaction piece) that the mortgage has been paid and discharged. Additionally, 21 P.S. § 720-2 provides, in pertinent part, that "Every mortgagee may enter of record in the office where the mortgage is recorded a duly executed satisfaction piece which shall forever thereafter satisfy and discharge the lien of the

mortgage referred to therein...." Thus, respondent concludes that a mortgage satisfaction does not constitute a property transfer.

"A mortgage is in essence a defeasible deed, requiring the grantee to **reconvey** the property held as security to the grantor upon satisfaction of the underlying debt or fulfillment of established conditions." *Hahnemann Medical,* 416 A.2d at 607 (emphasis added) (citing *Payne's Administrator v. Patterson's Administrator,* 77 Pa. 134, 137 (1874)). Once again starting with our predicate holding that a mortgage conditionally conveys the subject property, it is clear that when the obligations of the mortgage are satisfied, the effect of a recorded satisfaction must be to convey the property back to the mortgagor. Additionally, respondent's contrary argument is spurious. While it is true that a satisfaction piece discharges the lien on the property, it does not follow that such a discharge ineluctably cannot also effectuate a property transfer. As noted by petitioners, when the mortgage is satisfied, it becomes void and the effect of the satisfaction is that the property is reconveyed back to the mortgagor. Thus, there are several consequences to a mortgage satisfaction, including a discharge of the lien *and* a reconveyance of the property to the mortgagor. Accordingly, the Court Administrator properly defined property transfer to include mortgage satisfactions.

### Mortgage Releases

Petitioners argue that a mortgage release is a property transfer because it is an action whereby the mortgagee effects the removal of certain real estate from the collateral securing the mortgage debt. A release redefines the real-estate collateral which reduces the amount of real estate that will remain subject to the mortgage, usually in consideration for payment of less than the full amount of the mortgage debt. Mortgage releases can be employed to release all of the real estate collateral and are sometimes used even when the mortgagor has fulfilled all of the conditions of the defeasances. Similar to assignments, if the release of the mortgage were not deemed a reconveyance of the property, a situation would

arise where there had been a conveyance of the property to the mortgagee as a result of the original mortgage, but no return of title to the mortgagor upon release. Thus, as a practical matter, the recording of a mortgage release is tantamount to a "reconveyance" of property. Additionally, petitioners note that common forms of release of mortgage contain conveyancing language—*i.e.*, does remise, release, quit-claim, exonerate and discharge unto the mortgagor all that certain portion of said mortgaged premises. *See Ladner, supra,* 12.27(d), at 73. Petitioners thus conclude that if the transfer was merely of the mortgagee's lien or some interest in the real estate less than title itself, it would be inconsistent with the very terms of the typical release forms.

Respondent responds by noting that Ladner defines a "mortgage release" as an instrument duly signed and acknowledged by the mortgage holder whereby he agrees not to collect the mortgage debt by sale of the property released. *See Ladner, supra,* § 12.27(d), at 72. Respondent thus argues that a mortgage release is, at best, a forbearance to act and cannot be considered a transfer of a property interest because no new or further interest in property is created by the execution of the release.

A release of mortgage typically occurs when a single mortgage covers more than one property and the mortgagee desires to release one property from the lien without releasing the others. *See Ladner, supra,* § 12.27(d), at 72. Since the property was conveyed to the mortgagee when the mortgage was entered into, the effect of a release of that mortgage must be that the property released is reconveyed to the mortgagor. Respondent's argument that a mortgage release is merely a forbearance to act on the part of the mortgagee is unpersuasive. While a mortgage release is a forbearance on the part of the mortgagee to act and releases the mortgagor from the obligations under the mortgage, the release also reconveys the property to the mortgagor. Thus, the Court Administrator properly deemed mortgage releases to be subject to Act 122.

For the foregoing reasons, we hold that the Court Administrator properly promulgated financial regulations implementing 42 Pa.C.S. § 3733, as amended by Act 122. Additionally, in promulgating the regulations, the Court Administrator correctly defined "property transfer" to include mortgage assignments, mortgage satisfactions and mortgage releases. Thus, in accordance with the Court Administrator's regulations, the designated county officers are required to collect the fee specified in Section 3733 in connection with these transfers. Finally, the Recorder of Deeds of Chester County is directed to forward the monies he was ordered to collect and place in an interest-bearing escrow account to the Pennsylvania Department of Revenue for deposit into the appropriate accounts.

Justice EAKIN files a dissenting opinion in which Justice SAYLOR joins.

## DISSENTING OPINION

Justice EAKIN.

Although I agree with my colleagues' conclusion that § 3502(a) of the Judicial Code authorizes the Court Administrator to promulgate a regulation interpreting the term "property transfer," I believe the regulation's characterization of mortgages,[1] mortgage assignments, releases, and satisfactions, as "property transfers" for purposes of 42 Pa.C.S. § 3733(a.1)(1)(v) is not in accord with the law. Thus, I offer my dissent.

There is ample authority that in Pennsylvania, although a mortgage involves a conveyance, such a conveyance functions as a lien. "A mortgage, although *in form a conveyance* of title, is only *security* for the payment of money or the performance of another collateral contract." *Mancine v. Concord–Liberty Savings and Loan Association*, 299 Pa.Super. 260, 445 A.2d 744, 747 (1982) (emphasis added); *see also*

---

1. Section 3733(a.1)(1)(v) specifically subjects mortgages to the increased fee; my objection is thus limited to the assignment, release, or satisfaction of a mortgage.

*McIntyre v. Velte,* 153 Pa. 350, 25 A. 739 (1893); *Wilson v. Shoenberger's Executors,* 31 Pa. 295 (1858); *Atiyeh v. Bear,* 456 Pa.Super. 548, 690 A.2d 1245, 1251 (1997). "A mortgage, as between the parties, is a conveyance so far as necessary to render the instrument effective as a security, but only to that extent." *Eldredge v. Eldredge,* 128 Pa.Super. 284, 194 A. 306, 310 (1937) (citing *Beaver County B. & L. Ass'n. v. Winowich,* 323 Pa. 483, 187 A. 481 and 921 (1936); *Harper v. Consolidated Rubber Co.,* 284 Pa. 444, 131 A. 356 (1925)); *see also North American Properties, Ltd. v. Pocono Farms Lot Owners Ass'n.,* 489 F.Supp. 452, 457 (D.C.Pa.1980) ("The theory in [Pennsylvania] has always been that a mortgage is merely collateral for the payment of some primary obligation . . . ."), *affirmed,* 633 F.2d 211 (3d Cir.1980); *In re White's Estate,* 322 Pa. 85, 185 A. 589 (1936) (mortgage is treated only as security for payment of debt).

"Pennsylvania subscribes to the lien theory of mortgages, i.e., *a mortgage does not transfer title to the mortgagee; rather it constitutes a lien* on the mortgagor's interest, thereby securing the mortgagee's loan." *General Credit Co. v. Cleck,* 415 Pa.Super. 338, 609 A.2d 553, 556–57 (1992) (citing *In re City of Philadelphia,* 360 Pa. 589, 63 A.2d 42 (1949)) (emphasis added). As a lien, a mortgage vests no estate, but is a mere incident of the debt. *Day v. Ostergard,* 146 Pa.Super. 27, 21 A.2d 586, 588 (1941) (citing *Tryon v. Munson,* 77 Pa. 250 (1875)). The whole purpose of recording a mortgage is to provide notice of the person or entity that encumbers the title to the mortgaged property which is the security for the debt. *Ladner on Conveyancing in Pennsylvania* § 18.02 (4th ed.1979) (citing *Salter v. Reed,* 15 Pa. 260, 263 (1850)).

As a mortgage is merely a lien, not a transfer of property, a *fortiori* the release, assignment, or satisfaction of a mortgage cannot be a transfer of property. These documents are not transfers of property in any true sense; they merely deal with an obligation secured by a mortgage. This is clear from the very names of the actions themselves, for one does not "satisfy" a *transfer,* or "release" a *transfer;* one satisfies, assigns,

or releases an *obligation*. As these actions transfer no property, they should not be subject to § 3733(a.1)(1)(v)'s fee.

Section 3733(a.1)(1)(v) lists three taxable items only: "deed, mortgage or property transfer." As a release, assignment, or satisfaction of a mortgage is not itself a mortgage, it can only be taxed if it is a "property transfer." If a mortgage had to be enumerated separately in order to be assessed the fee, (i.e., the legislature felt mortgages are not clearly a part of "property transfers" within the meaning of this section) it follows that the lesser related documents referencing mortgages, such as assignments, releases, and satisfactions, must also be specifically named in order to be taxed. They could have been enumerated, for they are hardly uncommon documents, but they were not. The legislature's language, listing but three taxable categories, cannot and should not be broadened by regulatory definitional pronouncements.

Accordingly, I respectfully offer this dissent.

Justice SAYLOR joins this Dissenting Opinion.