J-A13025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN B. COOPER, JUANITA C. | : | |
| ROBINSON A/K/A JUANITA C. | : | |
| ROBINSON OTIENO | : | No. 1765 EDA 2019 |
| | : | |
| | : | |
| APPEAL OF: JUANITA ROBINSON | : | |

Appeal from the Order Entered May 15, 2019
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV--2016-005298

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 22, 2020**

Juanita C. Robinson (Robinson) appeals from the judgment,[1] entered in

the Court of Common Pleas of Delaware County, on a non-jury verdict[2] in the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We can dispose of Robinson's first issue on appeal, **see** Appellant's Brief, at 7, by recognizing that an appeal properly lies from the entry of judgment on the verdict, not from the order denying post-trial motions which is interlocutory.  **See Fanning v. Davne**, 795 A.2d 388 (Pa. Super. 2002). Here, the court entered judgment on the verdict on August 14, 2019, and Robinson's notice of appeal was filed on June 12, 2019.  Thus, Robinson's notice of appeal is timely and proper.  **See** Pa.R.A.P. 905(a) (appeal treated as filed after entry of judgment);**see also** Pa.R.A.P. 903(a) ("notice of appeal . . . shall be filed within 30 days after entry of the order from which the appeal is taken.").

[2]  In **Nicholas v. Hofmann**, 158 A.2d 675 (Pa. Super. 2017), our Court set forth the appropriate scope of review for a non-jury verdict:

amount of $401,701.55, in favor of Appellee, Wells Fargo, in this mortgage foreclosure action. After careful review, we affirm.

On June 8, 2004, John B. Cooper (John), Crisanta K. Cooper (Crisanta),[3] (collectively, the Coopers) and Robinson purchased a parcel of property (Property) located at 198 Harrison Road, Brookhaven, Pennsylvania, for $389,700.00. The Coopers are husband and wife; Robinson is John's sister. The Coopers held the Property as tenants-by-the-entireties (50%) and Robinson possessed the remaining 50% ownership interest, in a joint tenancy with the Coopers. When Robinson's husband suddenly passed away in 2002,

---

> Upon appeal of a non-jury trial verdict, we consider the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of law. When the appellate court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.
>
> It is inappropriate for an appellate court to make factual determinations in the face of conflicting evidence.

*Id.* at 688 -89 (citations omitted).

[3] Before Wells Fargo filed the instant complaint, Crisanta was released from this action.

the parties agreed to build a home together in which the Coopers could help raise Robinson's three young sons. On June 8, 2004, the parties executed a mortgage (2004 Mortgage) on the Property, in the amount of $295,700.00, from Option One Mortgage Corporation.[4] The Coopers' and Robinson's names are each handwritten as "Borrowers" on the first page of the document; each of the parties affixed his or her signatures to the final page of the 2004 Mortgage indicating their "accept[ance] and agree[ment] to the terms and covenants contained in th[e] Instrument[.]" 2004 Mortgage, 6/8/04, at 10. The signatures were witnessed and notarized. *Id.*

On July 12, 2006, the parties refinanced the Property and executed another mortgage (2006 Mortgage), in the amount of $357,000.00, with Wells Fargo. John Cooper, alone, was named on the note accompanying the 2006 Mortgage. John initialed each page of the 2006 Mortgage; Robinson was listed as a one of the "Borrowers" in the "Definitions" section on page one of the 2006 Mortgage. On the second to last page of the document, the Coopers and Robinson each affixed their signatures to the "Borrower (Seal)" lines and also signed their initials directly above a notary seal. One week later, the parties took out a $100,000 home equity line of credit (HELC) to finance payments on the Property. The document defines the Coopers and Robinson as "Borrowers" and also states that "Borrower[s are] the mortgagor[s] under this Security Agreement." Home Equity Line or Credit Open-End Mortgage,

---

[4] The deed to the Property, dated June 8, 2004, was recorded in the Delaware County Recorder of Deeds Office on June 16, 2004.

7/20/06, at 1. The parties all signed their names on the line "Borrower" at the end of the HELOC which was notarized. ***Id.*** at 14, 15.

In August 2012, the parties decided to refinance the 2006 Mortgage on the Property in order to reduce the interest rate. On August 27, 2012, John obtained a new loan from Wells Fargo for $332,594.00 — the loan that is the subject of the instant matter. As part of the loan agreement, John solely executed a note (Note) in favor of Wells Fargo; Wells Fargo is the holder of the Note. To further secure repayment on the loan, the Coopers and Robinson executed a mortgage (Mortgage) on the Property, signed the document and encumbered their interests in the Property. While Robinson's signature is on the signature page of the Mortgage, above a line with the word "Borrower" below it, her name is not type-written on the signature page and, most notably, she is not named as a "Borrower" on the first page of the Mortgage under the "Definitions" section. Robinson, however, did initial each page of the Mortgage, signed a truth-in-lending agreement and right to cancel document, and received Act 91[5] and a HUD-1 notice in connection with the Mortgage.

---

[5] Act 91 of 1983, 35 P.S. § 1680.401c, *et seq*.

In the fall of 2014, the Coopers moved out of the Property; Robinson, however, remained living at the residence.[6]  The parties defaulted on the loan beginning in July 2015.  On June 16, 2016, Wells Fargo filed an *in rem* action[7] in foreclosure on the Property against John and Robinson, seeking the amount due under the mortgage, with interest and costs.  Wells Fargo's complaint was reinstated in August 2016; John and Robinson filed preliminary objections on October 6, 2016.  On October 14, 2016, the court entered a default judgment against John for his failure to respond to the complaint.

In December 2016, Well Fargo amended its complaint.  In the amended complaint Wells Fargo averred that "[o]n or about August 27, 2012[,]" Cooper and Robinson "made, executed and delivered" a Mortgage to Wells Fargo, in the amount of $332,594.00, on the Property, that Robinson "is the record and real owner of the [Property,]" and that she and John Cooper "are in default under the terms of the [] Mortgage for . . . failure to pay the installments of

---

[6] The Coopers transferred their ownership interest in the Property to Robinson as a settlement during John's bankruptcy proceedings.  N.T. Stipulated Non-Jury Trial, 11/29/18, at 106.

[7] "The sole purpose of the judgment obtained through an action of mortgage foreclosure is to effect a judicial sale of the mortgaged property, as the judgment is *de terris* against the land, not *in personam*."  **U.S. Bank, N.A. v. Pautenis**, 118 A.3d 386, 394 (Pa. Super. 2015) (citation omitted).  "The precise amount due on a mortgage, therefore is 'essential, as [a] sheriff could not possibly distribute the proceeds of a foreclosure sale among the various parties in interest without knowing the exact extent of the claim of the foreclosing mortgagee.'"  **Id.** (citing 4 Goodrich Amram 2d § 1147(6):1 (Amram commentary)).

principal and interest due July 1, 2015." Wells Fargo Amended Complaint, 12/21/16, at ¶¶ 6, 8-9. On February 21, 2017, Robinson filed preliminary objections to the complaint which the trial court overruled. Robinson filed an answer and new matter in which she specifically denied that she "'made, executed[,] and delivered to [Wells Fargo]' said Mortgage [where] neither the copy of the Note [n]or [the] Mortgage attached to the Amended Complaint names Robinson as a Borrower." Robinson Answer and New Matter, 5/17/17, at ¶ 6.[8] In September 2017, Wells Fargo filed a motion for summary judgment against Robinson. Robinson filed a response in October 2017; the court denied the motion on January 25, 2018. In September 2018, Wells Fargo filed a second summary judgment motion. Robinson filed a response and, on November 7, 2018, the court denied the summary judgment motion.

The court held a two-day bench trial on November 29, 2018, and January 9, 2019, solely to determine Robinson's liability under the subject mortgage. At the close of Wells Fargo's case, Robinson moved for non-suit arguing that Wells Fargo had not provided any evidence to show that Robinson was a borrower or mortgagor on the Mortgage. The court denied the motion.

At trial, Robinson took the position that she was only a witness to the 2012 Mortgage, not a borrower on the instrument. Counsel claimed that this was borne out by the fact that her name was not listed as either a mortgagor or borrower on the document. At trial, Wells Fargo presented the testimony

_____

[8] On July 18, 2017, the court entered an *in rem* judgment against John for his failure to file an answer, with damages to be assessed at a later date.

of Cindy Shanabrook, a Wells Fargo loan verification consultant who "provides business records and research from Wells Fargo's system of record[s]." Stipulated Non-Jury Trial, 11/29/18, at 14-15. In this case, Shanabrook reviewed the parties' loan documents before trial, specifically the 2004 and 2012 mortgages and accompanying notes, and determined that Wells Fargo had been the originating lender on the subject mortgage. *Id.* at 15. Shanabrook testified that John was the only signatory to the 2012 Note and that he, alone, would be considered the borrower on the Note.[9] *Id.* at 22-23. Shanabrook also testified that under the terms of the 2012 Mortgage, Wells Fargo would consider the party(ies) to the Note, here John, to be the only individual(s) that could contact Wells Fargo to request changes to the account. *Id.* at 23. Shanabrook testified that the Coopers and Robinson received Act 91 Notice, and John and Robinson signed the "Right to Cancel" document and the "HUD-1" or settlement statement (Statement) under the "Buyer" section in connection with the Mortgage. The Statement outlined the parties with

---

[9] It is well-established that in Pennsylvania, a mortgage and a mortgage note are separate obligations. *Hagerty v. Fetner*, 481 A.2d 641, 646 (Pa. Super. 1984). The note is evidence of the debt and the mortgage provides the security for the debt. *Id.* citing *In re Evanovich's Estate*, 408 A.2d 1092 (Pa. 1979). The payment of either security discharges both, and a release or extinguishment of either, without payment, is discharge of the other unless the parties intend otherwise. *See* Standard PA Practice 2d, § 121:2. A mortgage is more than a security interest for the payment of money; it also acts as a conveyance of title. *Pines v. Farrell*, 848 A.2d 94 (Pa. 2004). A mortgage has a dual nature: it acts as a conveyance of property between the mortgagee and mortgagor, while also acting as a lien between the mortgagor or mortgagee and third parties. *Id.*

regard to the subject loan and referenced the subject mortgage. Moreover, a Truth-in-Lending Agreement, signed by all of the parties, advised them how much was being borrowed and the amount that would be financed. *Id.* at 27.

With regard to the Mortgage, Shanabrook testified that: (1) while Robinson's handwritten signature was on page 16 of the Mortgage, it was not typed like the Coopers; (2) Robinson's name was not on the Mortgage's notary acknowledgment; and (3) Robinson's name was not listed as a "Borrower" under the definition section of the Mortgage. *Id.* at 58-61. Shanabrook, however, testified that at one point, John and Robinson were "sending in payments" on the Mortgage, *id.* at 46; they would each make their own 50% payment representing their interest in the Property. John would pay over the phone and Robinson made payment "by hard copy check." *Id.* The checks submitted by Robinson for the Mortgage were entered as an exhibit at trial and were dated for the following loan payments: 12/14; 1/15; 2/15; 3/15; 5/15; and 6/15. *See* Plaintiff's Exhibit 29. In the memo line of two of the checks the word "Mortgage" is handwritten. *Id.* Shanabrook testified that it was not routine for Wells Fargo to accept checks from non-borrowers or from someone who would sign as a witness to a mortgage. *Id.* at 47. However, she did also testify that she did not "know that payments would be rejected if they were made by a [non-borrower]." *Id.* at 64. Moreover, Shanabrook had no information with regard to Robinson placing her initials on the Mortgage and whether they were placed there because she was told to sign as a witness. *Id.* at 77-78.

Robinson, the only witness for the defense, testified at trial that her brother, John, "shouldered the mortgage" and that she contributed her own funds from insurance proceeds toward the balance of the down payment on the Property. *Id.* at 93-94. Robinson also testified that she told John "[she] would always contribute 50 percent of whatever his mortgage amount was to make sure that [it] was covered." *Id.* at 94. Robinson testified that while she and John decided to refinance the original mortgage in 2006 and, again, in 2012,[10] she only signed the 2006 mortgage. *Id.* at 117. Robinson also testified that John was the only party to sign notes on each of the mortgages on the Property. Robinson stated that she paid the Mortgage to Wells Fargo, by check, several times in 2014 and 2015 to hold up her end of "her commitment to help [John] pay the [M]ortgage" . . . after he "left the premises [. . .] like he left the state." *Id.* at 135. Robinson testified that John gave her the account number for the Mortgage and that her checks included her 50% interest in the Property. *Id.* at 136.

On January 24, 2019, the court entered an *in rem* judgment in the amount of $401,701.55 in favor of Wells Fargo and against Robinson. Despite the fact that Robinson's name was not on the Note and was also not listed under the definition section of "Borrower" on the first page of the Mortgage, the court concluded that Robinson "manifested her intent to be bound by the terms of the Mortgage by initialing each page of the Mortgage and affixing her

---

[10] The 2012 Mortgage effectively paid off the 2006 mortgage. N.T. Stipulated Non-Jury Trial, 11/29/18, at 121-32.

signature over the line with the type-written term 'Borrower' under it." Findings of Fact/Conclusions of Law, 1/24/19, at 15, ¶ 13. Accordingly, the court determined that since Robinson executed the 2012 refinance mortgage which encumbered her 50% interest in the Property, admitted that she defaulted under the Mortgage, and stipulated to the payment history and default calculations proffered by Wells Fargo, that Wells Fargo, as mortgagor, was entitled to an *in rem* judgment. **Pautenis**, **supra** (mortgagor entitled to judgment in its favor where mortgagee admits to default, that he or she has failed to pay interest on obligation, and recorded mortgage is in specified amount).[11]

Robinson filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. On appeal, Robinson raises the following issue for our consideration:

> Whether, where a bank-created mortgage document defines how the borrower and mortgagor is as the person or persons listed within the definitions section of the mortgage, and where the bank failed to produce any evidence or testimony as to its intention to include a person not listed within the definitions section of the mortgage as a borrower or mortgagor, the trial court committed errors of law by deciding that the bank intended that such an unlisted person is a borrower and mortgagor under the mortgage.

Appellant's Brief, at 7.

---

[11] Although the property had been listed for sale, Robinson remained living in the Property at the time of trial. Robinson, however, admitted that she intends to sell the Property and pay off any amount due and owing to Wells Fargo. Robinson did not contest that the mortgage was in default. N.T. Stipulated Non-Jury Trial, 11/29/18, at 10-11.

Robinson contends that the "clear and unambiguous terms of the 2012 Refi Mortgage clearly define who is a 'Borrower' and 'Mortgagor' [and that she] is not and cannot be included in that definition [where] there is no testimony or evidence in the record to determine that [Wells Fargo] intended the definition of 'Borrower' and 'Mortgagor' to include [her]." Appellant's Brief at 11. Robinson also argues that the trial court applied the incorrect standard of review in reaching its decision and that general principles of contract law should have been utilized to interpret the meaning of the mortgage document.

Robinson concedes in her brief that her 50% interest in the Property "is subject to and encumbered by the 2012 Refi Mortgage." Appellant's Brief, at 15 n.5. However, she asserts that because her name is not typed anywhere on the Mortgage and her signature does not appear on page 16 of the mortgage document under the term "Borrower," only the Coopers were the intended borrowers and mortgagors under the Mortgage.

In **Second Fed. Sav. & Loan Ass'n v. Brennan**, 598 A.2d 997 (Pa. Super. 1991), our Court reiterated that:

> [a] mortgage is a formal document of specific character and it should be strictly construed. A mortgage agreement, as a contract, must be interpreted as a whole. One part of a contract cannot be interpreted so as to annul another part of the contract. A contract must be construed, if at all possible, to give effect to all of its terms. *Additionally, a contract's terms, if ambiguous, are construed against the drafter[, here, Wells Fargo].*

**Id.** at 999 (citations omitted) (emphasis added). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." **Ins. Adjustment Bureau, Inc. v.**

- 11 -

*Allstate Ins. Co.*, 905 A.2d 462, 469 (Pa. 2006).   When the terms of a contract are determined to be ambiguous, the court is free to use parole evidence "to resolve the ambiguity." *Id.* at 468-69.  In making the ambiguity determination, a court must "consider the words of the [contract], the alternative meanings suggested by counsel, and [the nature of the objective] evidence [to be] offered in support of that meaning," including extrinsic evidence.  *Walton v. Philadelphia Nat'l Bank*, 545 A.2d 1383, 1388 (Pa. Super. 1988) (citations omitted).

Here, the Mortgage contains an ambiguity with regard to the identity of the borrowers on the instrument.  Although Robinson signed the Mortgage, under seal, on the final page as a "-Borrower," she is not included in the Definitions' section on the first page of the document that specifically lists the "Borrowers."   Rather, only the Coopers (h/w) are specifically listed as "Borrowers" under the document.   Moreover, Robinson did not initial the document next to the word "Initials" on every page like the Coopers.  Based on these ambiguities, we cannot determine if Robinson was actually a "borrower" under the Mortgage.  Thus, the Court must ascertain the intent of the parties in executing the document by using parole evidence.  We conclude that the best evidence for ascertaining the parties' intent in the instant case is the Mortgage itself and the documents surrounding and associated with the Mortgage.  *Z & L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700-01 (Pa. Super. 1985) (court considers extrinsic evidence to determine intent of parties when agreement ambiguous; construction of agreement "can

be gleaned from contemporaneous or subsequent writings expressly stating their interpretation of ambiguous terms.")

Although the trial court did not explicitly find that the Mortgage was ambiguous with regard to the term "Borrower,"[12] the court used extrinsic evidence, i.e., the HUD-1, Act 21 Notice, Right to Cancel documents and Truth-in-Lending Agreement, to support its conclusion that Robinson was a borrower under the Mortgage. After examining those documents, all executed in conjunction with the Mortgage, we agree with the court's determination that Robinson was, in fact, a borrower under the Mortgage, and, thus, her 50% interest in the Property was properly subject to an *in rem* judgment in the underlying mortgage foreclosure action. Therefore, we affirm the trial court's judgment in the instant matter where its findings of fact are supported by the evidence of record and not premised on an error of law. **Nicholas**, **supra**.[13]

---

[12] We can affirm a trial court on alternative bases. **See Blumenstock v. Gibson**, 811 A.2d 1029, 1033 (Pa. Super. 2002) (we are not limited by trial court's rationale and may affirm its decision on any basis).

[13] Despite the fact that Robinson's name was not on the Note and was also not listed under the definition section of "Borrower" on the first page of the Mortgage, the court concluded that Robinson "manifested her intent to be bound by the terms of the Mortgage by initialing each page of the Mortgage and affixing her signature over the line with the type-written term 'Borrower' under it." Findings of Fact/Conclusions of Law, 1/24/19, at 15, ¶ 13. Accordingly, the court determined that since Robinson executed the 2012 Refi Mortgage which encumbered her 50% interest in the Property, admitted that she defaulted under the Mortgage, and stipulated to the payment history and default calculations proffered by Wells Fargo, that Wells Fargo, as mortgagee,

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/20

---

was entitled to a \$402,701.55 *in rem* judgment. ***U.S. Bank, N.A. v. Pautenis***, 118 A.3d 386 (Pa. Super. 2015) (mortgagee entitled to judgment in its favor where mortgagor admits to default, that he or she has failed to pay interest on obligation, and recorded mortgage is in specified amount).