J-S06028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTINE MARIE BAZZO | : | |
| | : | |
| Appellant | : | No. 599 WDA 2024 |

Appeal from the Judgment of Sentence Entered February 9, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001499-2021

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.: **FILED: May 9, 2025**

Justine Marie Bazzo ("Bazzo") appeals from the judgment of sentence imposed following her convictions for one count each of theft and receiving stolen property, and two counts each of burglary and criminal trespass.[1] We affirm.

We glean the following factual and procedural history from the evidence and testimony presented at trial. In 2016, Bazzo started working at the Center Med Spa and Salon ("the spa"), which offered a variety of services, including hair and nail services, facials, permanent make-up, eyelash extensions, chemical peels, and prescription injectables such as Botox. Because these injectables require a license to administer, the spa employed a physician's assistant and a doctor to perform these services, and restricted access to the Botox and other injectable products by keeping them in a locked room at the

---

[1] *See* 18 Pa.C.S.A. §§ 3921(a), 3925, 3502(a)(4), 3503(a)(1)(i).

back of the spa. The spa also kept skin care and eyelash enhancement products in locked display cabinets at the front of the spa. Further, pursuant to the spa's internal policy, employees were not permitted to remove any products from the spa premises unless they had paid for them.

In the course of her employment at the spa, Bazzo worked multiple days during the week during the spa's normal operating hours, exclusively performing eyelash extensions for clients by appointment. In this regard, the spa was open Tuesday through Saturday, and was closed on Sunday and Monday. The spa was open from 9:00/10:00 a.m. to 8:00 p.m., except on Fridays, when it closed at 4:00 p.m., and Saturdays, when it closed at 2:00/3:00 p.m. Given these operating hours, Bazzo could only schedule evening appointments on Tuesdays, Wednesdays, and Thursdays, as those were the days the spa stayed open until 8:00 p.m. If Bazzo did not have an appointment scheduled with a spa client, she would not work in the spa.

When working with a spa customer, Bazzo sometimes purchased and used eyelash extension products from the spa, and would submit receipts to spa management for each purchase. Bazzo did not have a license to use, nor did she have access to, any of the spa's prescription Botox or injectable products in the locked room. Similarly, Bazzo did not have authorization to access the locked display cabinets containing the spa's skin care and eyelash

enhancement products,[2] which were located by the front desk.  Additionally, because Bazzo's eyelash extension appointments could only take place during the spa's normal operating hours, Bazzo did not have a key to the spa, nor did she generally have permission to be in the spa outside of these hours.

In March 2019, the owner of the spa, Michelle Lucas ("Lucas"), noticed that prescription Botox and other injectable products were missing from the spa's inventory.  Accordingly, Lucas instructed the spa manager, Karen Hillegas ("Hillegas"), to photograph the Botox and other injectable product inventory kept within the locked room.  After checking the locked room the next morning, they discovered that additional Botox and injectable products were missing.  This prompted Lucas to review surveillance footage from inside the spa, which reflected that on two separate occasions, March 3rd and March 15th of 2019, Bazzo was in the spa while it was closed.[3]  Although the spa's surveillance cameras did not capture the locked room containing the spa's

_____

[2] We clarify that although these display cabinets contained skin care and eyelash **enhancement** products, these products were unrelated to the eyelash **extension** kits that Bazzo used on her clients.  **See** N.T., 11/16/22, at 93-94.  Thus, Bazzo had no need to access any of the products that were kept in the locked cabinets when performing eyelash **extension** services for spa clients.

[3] We note that March 3, 2019, was a Sunday.  Lucas explained that the spa was never open on Sundays, and that she did not give any employee permission to schedule appointments or be in the spa on that date.  We further note that March 15, 2019, was a Friday.  As explained previously, the spa had shorter hours on Fridays, such that it was only open until 4:00 p.m.  Accordingly, the spa had been closed for several hours when surveillance footage first captured Bazzo in the spa on this date at 7:23 p.m.

prescription injectable products, it captured a wide-angle view of the front desk, which included a view of the locked display cabinets containing skin care and eyelash enhancement products, as well as a hallway leading towards the back of the spa, where the locked injectables room and a separate exit were located.

The footage from the evening of March 3rd showed Bazzo alone in the spa, wearing gloves, and using a key that she took from the front desk to open, and subsequently take products from, a locked display cabinet containing skin care and eyelash enhancement products. The footage from the evening of March 15th showed Bazzo in the spa with an unidentified individual, wearing gloves, and using a flashlight to navigate the store in the dark. Again, Bazzo took a key from the front desk to unlock and take products out of a locked display cabinet containing skin care and eyelash enhancement products. On this occasion, Bazzo placed the products down her shirt and into a pile below her, before picking them up and walking towards the back of the store.[4] Neither Lucas nor Hillegas gave Bazzo permission to be in the spa while it was closed on either of these dates.

Lucas submitted a report to the police and provided, *inter alia*, the surveillance footage from both of these dates, and a list of missing injectables inventory that she compiled. Lucas indicated that the value of these stolen products totaled approximately $8,000. Before the police could act on this

---

[4] While reviewing security footage, Lucas also witnessed another one of her employees, Josie Ruffner, stealing products from the spa.

information, however, Lucas and Hillegas confronted Bazzo. When Lucas showed her the list of missing injectables inventory, Bazzo admitted she took Botox and other injectables from the locked room. When Lucas asked her why she took them, Bazzo responded she did not know why, that she was sorry for doing so, and that she would bring the products back. When Lucas showed Bazzo the surveillance video footage, Bazzo again apologized, admitted it was her on the video taking skin care and eyelash enhancement products from the locked cabinet, and offered to return these products as well. Finally, when Lucas asked Bazzo how she got into the building, Bazzo replied that she borrowed a key from the spa receptionist.

Following this confrontation and Bazzo's admissions, police arrested her and charged her with the above-referenced crimes. The matter proceeded to a jury trial at which Lucas, Hillegas, and Police Chief Scott Fanchalsky testified in relation to these facts. Additionally, the Commonwealth presented the surveillance video footage from both March 3rd and March 15th. Relevantly, both Lucas and Hillegas testified that: (1) neither of them authorized the spa receptionist to give Bazzo a key; and (2) Bazzo never returned any of the products she admitted to taking. Hillegas further testified that she did not believe the unidentified individual with Bazzo on March 15th was a client, as the spa's lights were off, and Bazzo did not check the individual out at the front register — an action the spa required her to take with a scheduled client. Bazzo did not testify in her defense.

At the conclusion of trial, the jury convicted Bazzo of each of the above-listed crimes. On February 9, 2023, the trial court imposed an aggregate sentence of three years' probation, with nine months of electronic home monitoring.[5] Bazzo filed a timely post-sentence motion, challenging the sufficiency and weight of the evidence as it relates to each of her convictions, which the trial court denied. Bazzo did not file a notice of appeal. However, she later filed a motion to reinstate her appellate rights *nunc pro tunc*, which the trial court granted. Bazzo thereafter filed a timely notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925.[6]

_____

[5] We note that although the trial court initially sentenced Bazzo on February 3, 2023, it entered an amended sentencing order on February 9, 2023, explaining that the sentences it imposed for each count of burglary were to run concurrently. *See* Amended Sentencing Order, 2/9/23.

[6] We note with disapproval that, in her concise statement, Bazzo purported to raise a challenge to the sufficiency of the evidence supporting each of her convictions. However, Bazzo failed to specify the element or elements of each conviction that allegedly went unproven at trial, as is required to preserve a sufficiency challenge for our review. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). Instead, Bazzo merely referred to her post-sentence motion. *See* Concise Statement, 6/13/24. Notably, our Supreme Court has categorically rejected incorporation by reference as a means of presenting an issue in the argument portion of an appellant's brief, and has found waiver on this basis. *See Commonwealth v. Briggs*, 12 A.3d 291, 342–43 (Pa. 2011); *see also Pines v. Farrell*, 848 A.2d 94, 97 n.3 (Pa. 2004) (holding that reliance on briefs and pleadings already filed in a case is not a recommended form of advocacy and noting that "this Court is not obliged to root through the record and determine what arguments, if any, respondent forwarded below"). While we could find waiver of Bazzo's sufficiency challenge on this basis, we decline to do so because the trial court addressed it in its Rule 1925(a) opinion. We note, however, that in her post-sentence motion, the **only** element that Bazzo claimed went unproven at trial for each of her convictions was her identity as the perpetrator. *See* Post-Sentence Motion, 2/10/23, at unnumbered 4-5.

- 6 -

Bazzo raises the following issues for our review:

1. Whether the evidence was insufficient to sustain the guilty verdicts?

2. Whether the lower court erred in failing to grant a new trial as the verdicts were against the weight of the evidence?

Bazzo's Brief at 4.

In her first issue, Bazzo challenges the sufficiency of the evidence supporting her convictions. A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *See Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of

- 7 -

a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quotations marks, brackets, and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Orr***, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*) (citations and brackets omitted).

We first address Bazzo's sufficiency challenges as they relate to her convictions for burglary and criminal trespass. A person commits the crime of burglary if they enter a building or occupied structure with the intent to commit a crime therein, in which at the time of the offense, no person is present. ***See*** 18 Pa.C.S.A. § 3502(a)(4). A person commits the crime of criminal trespass if they enter into a building, or gain entry to a building by subterfuge, knowing that they are not licensed or privileged to do so. ***See*** 18 Pa.C.S.A. § 3503(a)(1)(i).

Bazzo argues the evidence was insufficient to support her convictions for burglary and criminal trespass, as she had implied permission to enter the spa on both March 3rd and March 15th because the receptionist gave her a key. Bazzo theorizes that, because the receptionist was an agent of the spa and had the authority to schedule employees to work in the evenings, the receptionist thus had the apparent authority to permit her to enter the spa outside of its usual business hours. As such, Bazzo claims that the Commonwealth could only dispute this grant of authority by calling the

receptionist "as a witness to establish if the license and privilege was induced by deception." Bazzo's Brief at 14. Thus, because the Commonwealth did not do so, Bazzo argues the Commonwealth could not "establish that [she] was not licensed or permitted to enter" the spa on either of these occasions, or that she entered the spa with an intent to commit a crime therein. *Id*.

The trial court determined that the evidence was sufficient to support each of Bazzo's convictions for burglary and criminal trespass. The court reasoned as follows:

> A review of the evidence in this case, read in the light most favorable to the verdict-winner, demonstrates that [Bazzo] twice surreptitiously entered her workplace at times when she knew the business was closed by using a key which she borrowed from another employee without authorization from either the business owner or the business manager. The evidence further shows that [Bazzo] moved about the premises using a flashlight and gloves, demonstrating a consciousness of guilt. Additionally, [Bazzo] removed products from the business without permission or other authorization, thus committing a theft. Finally, [Bazzo verbally] confirmed her crimes in a statement to Lucas. This evidence is sufficient to support the jury's conclusion that [Bazzo] intended to commit a crime when she entered the [spa] on two different occasions at times when she had no authorization to be there; therefore, the evidence is sufficient to establish the crimes of burglary.

> * * * *

> [As for Bazzo's convictions for criminal trespass], the evidence showed that [Bazzo] entered the premises at a time when she knew that the business was closed. She used a key which she obtained from another employee without the authorization of the owner or manager. [Bazzo] was recorded on video using a flashlight and gloves which can be interpreted as an attempt to conceal her actions, thus demonstrating that she knew she did not have permission or authorization to be present in the building at that time. [Bazzo verbally] acknowledged this crime

in a statement to Lucas. This evidence is sufficient to establish the crimes of criminal trespass.

Trial Court Opinion, 7/18/24, at 7, 10.

Viewing the record in the light most favorable to the Commonwealth as the verdict winner, we determine that the evidence was sufficient to support Bazzo's convictions for burglary and criminal trespass. Here, Bazzo does not dispute that she was in the spa while it was closed on both March 3rd and March 15th. Further, the record shows that Lucas did not typically permit employees to be in the spa when it was closed, and neither Lucas nor Hillegas gave Bazzo permission to schedule appointments during, or otherwise be in the spa on, either of these occasions. Critically, neither Lucas nor Hillegas permitted Bazzo to have a key, supporting the fact that Bazzo did not have permission to be on the premises outside of the spa's regular operating hours, when other spa employees would not be present.

Moreover, Bazzo presented no evidence that she scheduled any appointments on the evenings of March 3rd and March 15th, nor does the video footage indicate that Bazzo was in the spa on either of these occasions to perform a service for a client. Instead, the footage showed Bazzo wearing gloves, presumably to prevent leaving her fingerprints as evidence of her crimes, and using a flashlight to navigate the spa in the dark. This evidence, viewed in the light most favorable to the Commonwealth, supports the finding that Bazzo did not have, or believe that she had, permission to be in the spa on either of these occasions, and that she entered the spa when it was closed

and had no other employees present with the intention of stealing spa inventory. As such, her sufficiency challenge as to the convictions for burglary and criminal trespass is without merit.

We next review Bazzo's sufficiency arguments as they relate to the convictions for theft and receiving stolen property. "A person is guilty of theft if [s]he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). As for the crime of receiving stolen property, a person is guilty if she "intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

Bazzo argues the evidence was insufficient to support her conviction for theft, as "[t]he Commonwealth failed to prove what items were specifically taken by [Bazzo] OR that she intended to deprive the owner of the items." Bazzo's Brief at 16. Bazzo highlights that while employed at the spa, she would use supplies that she purchased from the spa and turn in receipts for these purchases. As such, she asserts that the mere fact that "items were missing from the store does not establish that the Commonwealth proved beyond a reasonable doubt that [she] took" them. *Id*. In support, Bazzo points to the fact that Lucas observed a different spa employee stealing supplies on video surveillance during this time period, and that she similarly

confronted this person for stealing. Bazzo emphasizes that the items that the other employee took "were unable to be identified." *Id*.

Bazzo also argues that the evidence was insufficient to support her conviction for receiving stolen property, reiterating that the Commonwealth failed to show that she "stole any missing beauty supplies that she had not purchased." *Id*. at 17. Thus, she contends the Commonwealth failed "to establish 'acquiring property of the spa' and . . . that said property was 'stolen.'" *Id*. Lastly, Bazzo maintains that the Commonwealth failed to establish that she intended to permanently deprive the spa of the products she took, as the evidence showed that she told both Lucas and Hillegas that she would return them.

The trial court determined that the evidence sufficiently supported Bazzo's convictions for theft and receiving stolen property, reasoning as follows:

> The evidence in this case, which was credited by the jury, shows that [Bazzo] twice entered the [spa] without authorization and was captured on surveillance as she removed products from a [locked] cabinet. The evidence also showed that some of the products were found to be missing after [Bazzo] had accessed the area where the products were kept. Finally, [Bazzo] confessed to stealing dermatological products from the business and promised to return them. The evidence sufficiently supports the jury's finding that [Bazzo] was guilty of theft and receiving stolen property . . ..

Trial Court Opinion, 7/18/24, at 8-9.

Viewing the record in the light most favorable to the Commonwealth as the verdict winner, we determine the evidence was sufficient to support

- 12 -

Bazzo's convictions for theft and receiving stolen property. In the instant case, both Lucas and Hillegas testified that the spa's video surveillance footage showed Bazzo taking products from the spa on two separate occasions. Similarly, when both Lucas and Hillegas confronted Bazzo with this surveillance footage and an itemized list of missing injectables products, Bazzo admitted that she took the injectables products from the spa and that she was the individual captured taking the skin care and eyelash enhancement products in the surveillance footage.

As for Bazzo's claim that she did not intend to permanently deprive the spa of these products, we emphasize that: (1) Bazzo admitted that she stole the products and only offered to return them after both Lucas and Hillegas confronted her with evidence that she took products from the spa without permission or payment; and (2) despite this offer, Bazzo did not return any of these products during the three-year period leading up to trial. Further, whereas Bazzo claims that she only took products that she had purchased, she did not provide any receipts for these purchases or any other evidence in support of this contention. Accordingly, we determine that the evidence of record is sufficient to support Bazzo's convictions for theft and receiving stolen property, and we conclude her first issue is without merit.

In her second issue, Bazzo argues that each of her convictions was against the weight of the evidence. As our Supreme Court has explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is

sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (brackets and citation omitted). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court." *Id*. at 546 (citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial

- 14 -

judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).

Bazzo argues the verdicts were against the weight of the evidence because they were based on pure conjecture. With respect to the burglary and criminal trespass convictions, Bazzo contends that there was no evidence presented to prove that she was not licensed or privileged to enter her place of employment with a key.[7] With respect to the theft and receiving stolen property convictions, Bazzo argues that the evidence was so weak and inconclusive that it could not support the finding "that it was [Bazzo] who stole said items or received said items knowing they were stolen." Bazzo's Brief at 20.

The trial court considered Bazzo's weight challenge and concluded that it lacked merit. The court reasoned that:

> . . . the Commonwealth's evidence . . . was not contradictory in nature or so tenuous, vague, and uncertain that the verdicts of guilty shocks the conscience of the court. [Bazzo] was identified on a video surveillance recording by two people who knew her

_____

[7] We note that Bazzo's argument with regard to there being "no evidence" to support an element of the crimes of burglary and criminal trespass presents a challenge to the ***sufficiency*** of the evidence, not the ***weight***. We reiterate that any challenge to the weight of the evidence underlying a guilty verdict concedes that the evidence was sufficient to sustain it. ***See Widmer***, at 751.

well. The video also was presented at trial so that the jurors could make their own determination as to [Bazzo's] identity. Finally, [Bazzo] confessed to her crimes. [Bazzo's] . . . weight of the evidence [claim] regarding her identity is denied.

Trial Court Opinion, 7/18/24, at 11.

Based on our review, we discern no abuse of discretion by the trial court in denying Bazzo's challenge to the weight of the evidence. As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *See id*.

Here, Bazzo is essentially asking this Court to reweigh the evidence to accord no weight to the testimony provided by Lucas and Hillegas: (1) identifying Bazzo as the person taking products from the spa in the video surveillance footage; and (2) recounting that, when confronted, Bazzo admitted to taking the missing inventory and offered to return it. This, we cannot do. *See Talbert*, 129 A.3d at 545 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the jury, which was free to believe all, part, or none of the evidence and testimony and to determine credibility). Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim. In this regard, we discern no abuse of such discretion.

Importantly, we note that the trial court judge determined that Bazzo's guilty verdicts did not shock his conscience. We further emphasize that in considering Bazzo's weight challenge, the trial court credited the testimony from both Hillegas and Lucas, who had worked with Bazzo since 2016, that Bazzo was the individual stealing products on video surveillance footage. The trial court also credited their testimony that Bazzo confessed to these crimes when they confronted her with this footage and a list of missing injectables inventory, and that she apologized and offered to return the items that she had stolen. Lastly, the trial court highlighted that the Commonwealth presented the surveillance footage directly to the jury so that it could make its own determination as to the identity of the individual who stole the items. On this record, we discern no abuse of discretion by the trial court in denying Bazzo's weight challenge. Thus, as neither of Bazzo's issues have merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/09/2025

- 17 -